IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CROWN COAL & COKE COMPANY,          )
            Plaintiff,              )
                                    )
        v.                          )      Civil Action No. 07-1208
                                    )
COMPASS POINT RESOURCES, LLC;       )
JAMES H. HOYT; and COURTNEY         )
O. TAPLIN,                          )
            Defendants.             )

MEMORANDUM and ORDER

Gary L. Lancaster
District Judge.                     March , 2009

        This business dispute stems from the creation of the
defendant company, Compass Point Resources, LLC ("Compass Point") by
defendants James Hoyt and Courtney Taplin, former employees of
plaintiff Crown Coal & Coke Company ("Crown Coal"). Crown Coal
alleges that while employed with Crown Coal, defendants Taplin and
Hoyt created Compass Point, a competing business, and in doing so
diverted Crown Coal customers to Compass Point using Crown Coal's
confidential and proprietary business information. Crown Coal
alleges tortious interference with business relations, violation of
the Uniform Trade Secrets Acts of Pennsylvania and Ohio, violation
of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, civil
conspiracy, and conversion against all defendants and a claim for
breach of fiduciary duty against defendants Taplin and Hoyt [doc.
no. 14].

Defendants filed a counterclaim against Crown Coal [doc. no. 33]. Defendants contend that Crown Coal failed to pay defendants Taplin and Hoyt commissions for business they secured for Crown Coal and that Crown Coal improperly accessed defendants' computer and obtained confidential information. Defendants assert claims for unjust enrichment, promissory estoppel, breach of contract implied in fact, tortious interference with business relationships, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and libel.

Defendants have moved for summary judgment as to all of plaintiff's claims [doc. no. 57].[1] For the reasons set forth below, defendants' motion will be DENIED.

## I. BACKGROUND

Unless otherwise indicated, the facts set forth below are undisputed.

### A. The Parties

Crown Coal is a family owned company that sells metallurgical coke and coal from coal companies and coke manufacturers (suppliers) to steel companies and other manufacturing companies (buyers). Crown Coal's principal place of

---

[1] Plaintiff has moved for summary judgment on its own breach of fiduciary duty claim and as to all of defendants' counterclaims [doc. no. 65]. Plaintiff's motion will be addressed in a separate opinion.

business is in Pittsburgh, Pennsylvania.

Crown Coal implements the sale of coke and other raw materials for suppliers, then charges the suppliers commissions for implementing those sales. Commissions are based upon the weight of the material delivered. Crown Coal invoices the supplier for its commission once the material is delivered to the buyer and the weight is reported to Crown Coal.

Crown Coal hired defendant Taplin as Vice President of Sales on February 14, 1989. Crown Coal hired defendant Hoyt as a Vice President on February 1, 1998. Neither defendant Taplin nor defendant Hoyt had an employment contract with Crown Coal. Both defendant Taplin and defendant Hoyt were salesmen for Crown Coal until they resigned in May 2007. Both men worked for Crown Coal out of an office in Willoughby, Ohio. Their duties included: developing business opportunities for Crown Coal; soliciting customers and potential customers to purchase raw materials through Crown Coal; selling raw materials to Crown Coal's customers; and interacting with raw material suppliers and cargo companies to arrange for the delivery of raw materials to customers. Crown Coal paid defendant Taplin and defendant Hoyt salaries plus commissions.

B.    Colcarbon

In 2004, Crown Coal began doing business with a Columbian coke manufacturer, Colcarbon. The two companies entered into a sales agency relationship whereby Colcarbon agreed to pay Crown

Coal $5.00 per metric ton of Colcarbon coke that Crown Coal sold. Crown Coal and Colcarbon did not enter into a written agreement.

Crown Coal sold the following amounts of Colcarbon coke and received the following commissions from Colcarbon from 2004 through 2006:

| Year | Tons Sold | Commissions |
|------|-----------|-------------|
| 2004 | 27,413.80 | $137,069.00 |
| 2005 | 36,330.10 | $181,650.50 |
| 2006 | 119,857.03 | $599,285.15 |

From 2004 to 2006, Crown Coal received more commissions from Colcarbon than from any other coke supplier.

According to defendants Taplin and Hoyt, in November 2006, Colcarbon principal Camilo Montana stated to them that Colcarbon had decided to cease using Crown Coal.[2] According to

---

[2]

In support of this contention, defendants have submitted an Affidavit signed by Mr. Montana wherein Mr. Montana states,

> In November of 2006, I advised Courtney Taplin and James Hoyt that I had decided to discontinue utilizing Crown Coal & Coke as an agent for the sale of coke in North America. I advised them to maintain strict confidentiality regarding my decision and not to communicate same to anyone at Crown Coal & Coke.
>
> ... I repeatedly advised Mr. Taplin and Mr. Hoyt that under no circumstances would I consider continuing to utilize the services of Crown Coal & Coke.

[Doc. No. 58-10].

4

defendant Taplin, Mr. Montana further stated that he wanted defendants Taplin and Hoyt to be Colcarbon's sales representatives. Mr. Montana told them that they should keep the conversation confidential and not report it to Crown Coal. Complying with Mr. Montana's wishes, defendants Taplin and Hoyt did not inform Crown Coal of Mr. Montana's statements or intentions.

In the following weeks, Mr. Montana, defendant Taplin and defendant Hoyt negotiated the terms of a sales agency agreement with Colcarbon. Their discussions remained confidential.

C. <u>Compass Point</u>

In early 2007, defendants Taplin and Hoyt began planning the creation of their own company, Compass Point. On January 29, 2007, defendants Taplin and Hoyt filed Articles of Organization for Compass Point with the Ohio Secretary of State. Defendants Taplin and Hoyt formed defendant Compass Point to engage in the business of selling coal, coke and other raw materials in competition with Crown Coal.

After three months of negotiations, on April 12, 2007, defendants Taplin and Hoyt and Mr. Montana executed the Compass Point-Colcarbon agreement. The Compass Point-Colcarbon agreement provides, <u>inter alia</u>:

- a seven-year term running through 2013;
- Colcarbon will make not less than 250,000 tons of Colcarbon coke available, on an annual basis, for sale by Compass Point; and

- Colcarbon will pay Compass Point $3.00/ton for the first 100,000 tons, $2.00/ton for the second 100,000 tons and $1.00/ton for all tons in excess of 200,000 tons.

[Doc. No. 73 at ¶¶ 195, 196].

On April 11, 2007, one day prior to entering into the sales agency agreement with Colcarbon, Compass Point sent Colcarbon a letter stating that Compass Point ha the "full support" of coal suppliers Pioneer Fuels Corporation, Midland Trails Resources, and A&G Resources to work with Colcarbon "in the effort to sell their product to worthy South American customers." [Doc. No. 68-8, Ex. 5].

On May 15, 2007, defendants Taplin and Hoyt resigned from Crown Coal. However, they continued their employment and Crown Coal paid their salaries through May 31, 2007.

Soon after defendants Taplin and Hoyt resigned, Crown Coal remotely accessed the laptop computers it had provided to them. Crown Coal then learned of the Compass Point-Colcarbon relationship. On June 17, 2007, Crown Coal's computer consultant inspected the server and laptops used by defendants Taplin and Hoyt. After the computer consultant indicated that information had been deleted from the computers, Crown Coal sent the server and laptops to a computer forensic specialist to recover any deleted information. The forensic specialist sent Crown Coal an invoice for $3,690.00. Crown Coal contends that it also paid its computer consultant $4,737.50 for inspecting the computers. Defendants

Taplin and Hoyt deny deleting any information from the computers.

D. Other Suppliers and Buyers

In early 2007, while employed with and working for Crown Coal, defendants Taplin and Hoyt sold Colcarbon coke to various buyers. Specifically, defendants Taplin and Hoyt sold 40,000 tons of Colcarbon coke to Republic Engineered Products ("Republic"). In March of 2007, 20,000 tons were delivered to Republic. The remaining 20,000 tons were delivered in April 2007. Pursuant to Crown Coals's $5/ton sales agency agreement with Colcarbon, Crown Coal was owed a commission from Colcarbon in the amount of $200,000. On September 7, 2007, however, Compass Point sent Colcarbon an invoice for commissions on those deliveries.

Also in early 2007, while working for Crown Coal, defendants Taplin and Hoyt sold approximately 120,000 tons of Colcarbon coke to Stelco which was to be delivered in six shipments. Stelco began receiving shipments in May of 2007. On September 7, 2007, however, Compass Point sent Colcarbon an invoice for commissions on those deliveries. The parties dispute whether defendants Taplin and Hoyt informed Crown Coal of the sales to Republic and Stelco.

E. Office Furniture

Crown Coal purchased the furniture used by defendants Taplin and Hoyt in the Willoughby office. The furniture, which includes desks, chairs and file cabinets, remains in the Willoughby

office.


II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986) (internal quotation marks omitted). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. <u>Id</u>. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id</u>. at 248-49.

To demonstrate entitlement to summary judgment, defendants, as the moving parties, are not required to refute the essential elements of the plaintiff's cause of action. Defendants need only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. <u>Celotex</u>

8

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such evidence, then he is not entitled to a trial, and defendants are entitled to summary judgment as a matter of law.

It is on this standard that the court has reviewed the motion for summary judgment and the response thereto.


III. DISCUSSION

    A.    Choice Of Law

As an initial matter, the court must determine whether to apply Ohio law or Pennsylvania law. A federal court sitting in diversity must apply the choice of law rules of the forum state in determining which state's law to apply to the substantive issues before it. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Blakesley v. Wolford, 789 F.2d 236, 238 (3d Cir. 1986). As this action is brought in the United States District Court for the Western District of Pennsylvania, Pennsylvania's choice of law rules apply.

Pennsylvania's choice of law rules require a multi-step analysis. The first step is to determine whether an actual conflict exists between the laws of Pennsylvania and Ohio. If

their laws differ, we must examine the policies underlying the law of each jurisdiction and ascertain whether the conflict is "true", "false" or "unprovided-for". <u>Hammersmith v. TIG Ins. Co.</u>, 480 F.3d 220, 230 (3d Cir. 2007). Further analysis is required only if there is a "true" conflict, i.e., if the interest of one jurisdiction would be impaired by applying the law of the other jurisdiction. <u>Id</u>. If their respective laws are the same, there is no conflict at all and the choice of law analysis ends; Pennsylvania law would apply. <u>Id</u>.

We have reviewed the law of Ohio and Pennsylvania with respect to the claims of breach of fiduciary duty, tortious interference with contractual relations, conspiracy, the Uniform Trade Secrets Act, and conversion and find that no conflict exists. As such, Pennsylvania law applies. <u>See id</u>.

B. <u>Defendants' Motion For Summary Judgment</u>

Defendants argue that all six of plaintiff's claims fail as a matter of law. We will address each claim in turn.

1. <u>Plaintiff's breach of fiduciary duty claim</u>

Defendants Taplin and Hoyt contend that Crown Coal's breach of fiduciary duty claim fails because: (1) no such duty existed, and (2) they did not breach any such duty.[3] We find that

---

[3] Conversely, Crown Coal contends that it is entitled to judgment as a matter of law as to its breach of fiduciary duty claim [doc. no. 65]. Crown Coal's argument will be addressed in a separate

10

defendants are not entitled to judgment as a matter of law on this claim as material issues of fact remain in dispute.

Under Pennsylvania law, an employee is an agent of his employer and owes his employer a duty of loyalty.[4]  See Reading Radio, Inc. v. Fink, 833 A.2d 199, 211 (Pa. Super. Ct. 2003). Accordingly, defendants Taplin and Hoyt, as agents and employees of Crown Coal, owed Crown Coal a duty of loyalty.

To establish a breach of the fiduciary duty of loyalty, "a plaintiff must demonstrate that his agent acted for a person or entity whose interests conflicted with the plaintiff."  Reading Radio, 833 A.2d at 211 (citing Restatement (Second) of Agency § 394 (1958)).  The Pennsylvania courts, however, also apply, where relevant, comment (e) of section 393 of the Restatement of Agency, Second, which provides:

> After the termination of his agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed. See sec. 396. Even before the termination of the agency, he is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his

opinion.

[4]

Similarly, under Ohio law, an implied covenant of good faith and loyalty exists between an employee and his employer.  See Staffilino Chevrolet, Inc. v. Balk, 813 N.E.2d 940, 951 (Ohio Ct. App. 2004)("it is said to be well-established law across the country that an agent or employee is prohibited from acting in a manner inconsistent with his agency or employment and is bound to exercise the utmost good faith and loyalty in performance of his obligations.")

> employer's business and acquired therein.
> Thus, before the end of his employment, he can
> properly purchase a rival business and upon
> termination of employment immediately compete
> ... .

Restatement (Second) of Agency § 393 cmt. e (1958). <u>See Spring Steels, Inc. v. Molloy</u>, 162 A.2d 370, 375 (Pa. 1960); <u>United Aircraft Corp. v. Boreen</u>, 413 F.2d 694, 700 (3d Cir. 1969). The parties agree that neither defendant Taplin nor defendant Hoyt was bound by a restrictive agreement. The issue, then, is whether defendants Taplin and Hoyt did more than merely make arrangements to compete with Crown Coal.

We find that, based upon the evidence of record, a reasonable jury could determine that defendants Taplin and Hoyt did more than merely make arrangements to compete with Crown Coal. The following key facts are not disputed: defendants Taplin and Hoyt covertly formed their own company, Compass Point, to engage in the business of selling coal, coke and other raw materials in competition with Crown Coal; and, they negotiated a sales agency agreement between Compass Point and Colcarbon while still employed with Crown Coal. According to defendants, the Compass Point-Colcarbon agreement was not a diversion of Crown Coal's business because Colcarbon was no longer a customer of Crown Coal:

> Hoyt and Taplin did not act in bad faith by
> entering into the agreement between Colcarbon
> and Compass Point. Colcarbon expressly stated
> to Hoyt and Taplin it would no longer do
> business with Crown Coal.

12

[Doc. No. 59 at 15; see also Doc. No. 58-10].

However, whether Colcarbon was still a customer of Crown Coal at the time defendants Taplin and Hoyt negotiated the Compass Point-Colcarbon agreement is a disputed issue of fact. There is evidence which indicates that Colcarbon was still a customer of Crown Coal in early 2007: defendants Taplin and Hoyt admit selling 40,000 tons of Colcarbon coke to Republic and 120,000 tons of Colcarbon coke to Stelco in early 2007 while still employed with Crown Coal [doc. no. 73 at ¶¶ 216 - 221]. Based upon these transactions, a jury could find that Colcarbon and Crown Coal had a continuing business relationship in early 2007.[5] In which case, the Compass Point-Colcarbon agreement would constitute a diversion of Crown Coal business. See SHV Coal, Inc. v. Continental Grain Co., 545 A.2d 917, 921 (Pa. Super. Ct. 1988)(finding that employee's efforts to divert longstanding customer from employer to a competitor, with whom he had agreed to accept employment, was a clear violation of the employee's duty of loyalty), rev'd on other grounds, 587 A.2d 702 (Pa. 1991).

Therefore, we cannot say, as a matter of law, that defendants Taplin and Hoyt only prepared to compete and did not divert any business from Crown Coal while still employed with Crown Coal. Defendants' motion will, therefore, be denied as to Crown

---

[5] We also note that while Mr. Montana has stated that Colcarbon had decided to cease using Crown Coal by November of 2006, no such decision was ever communicated to Crown Coal.

Coal's breach of fiduciary duty claim.

## 2.   Plaintiff's tortious interference claim

Plaintiff contends that defendants tortiously interfered with the Crown Coal-Colcarbon agreement.   The elements of a claim for tortious interference with contractual relations are: (1) the existence of a contractual relation between the plaintiff and a third party; (2) purposeful action of the defendant specifically intended to harm the existing relation; (3) the absence of privilege to do so; and (4) resulting damages.[6] See Reading Radio, 833 A.2d at 211.

Defendants contend that this claims fails because there was no existing contract between Crown Coal and Colcarbon.   As discussed above, whether Colcarbon was still a customer of Crown Coal at the time of the Compass Point-Colcarbon negotiations is a disputed question of fact.   As such, we cannot say, as a matter of law, that a contract did not exist between Crown Coal and Colcarbon.

Additionally, defendants argue that Crown Coal cannot establish damages.   We disagree.   In the event a contract existed

---

[6]

Similarly, the elements for a claim of tortious interference with contractual relations under Ohio law are: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification; and (5) resulting damages. Fred Siegel Co., L.P.A. v. Arter & Hadden, 707 N.E.2d 853, 858 (Ohio 1999).

between Crown Coal and Colcarbon in the spring of 2007, defendants'
Compass Point-Colcarbon agreement resulted in the loss of future
Colcarbon commissions to Crown Coal. Defendants' motion will,
therefore, be denied as to Crown Coal's claim of intentional
interference with contractual relations.

### 3.  Plaintiff's Uniform Trade Secrets Act claim

Crown Coal alleges that defendants misappropriated Crown
Coal's trade secrets in violation of the Pennsylvania Uniform Trade
Secrets Act (PUTSA), 12 Pa.Con.Stat.Ann. § 5301 et seq. The
elements of a misappropriation of trade secrets claim in
Pennsylvania are: "(1) the existence of a trade secret; (2)
communication of the trade secret pursuant to a confidential
relationship; (3) use of the trade secret, in violation of that
confidence; and (4) harm to the plaintiff." Moore v. Kulicke &
Soffa Indus., Inc., 318 F.3d 561, 566 (3d Cir. 2003). "One who
discloses or uses another's trade secret, without a privilege to do
so, is liable to the other if ... his disclosure or use constitutes
a breach of confidence." Id. at 566 n.3 (citing Restatement (First)
of Torts § 757 (1939)).

Defendants contend that this claim fails because Crown
Coal cannot identify a protected "trade secret" as defined by the
PUTSA. The PUTSA defines a "trade secret" as:

> Information, including a formula, drawing,
> pattern, compilation including a customer
> list, program, device, method, technique or
> process that:

15

> 1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa.Cons.Stat.Ann. § 5302.[7]

In determining whether information is a trade secret, we must consider the extent to which the information is known outside of the owner's business, the extent to which it is known by

---

[7] The Ohio Uniform Trade Secrets Act, O.R.C. § 1333.61(D), also defines a trade secret as,

> [I]nformation, including the whole or any portion or phrase of any scientific or technical information, design process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61(D).

16

employees and others involved in the owner's business, the value of the information to the owner and his competitors, the amount of effort or money expended in developing the information, and the ease or difficulty with which the information could be acquired or duplicated by others. S.I. Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1256 (3d Cir. 1985).

Crown Coal argues that its collection and maintenance of its business information, over many years and at considerable effort, constitutes a trade secret. Indeed, under Pennsylvania law, a compilation of data that has independent economic value can be protected as a trade secret. See e.g., Morgan's Home Equip. Corp. v. Martucci, 136 A.2d 838, 842-43 (Pa. 1957) (holding that customer data on, and confidential route of, door-to-door salesmen's customers were entitled to protection as trade secrets). Defendants respond that the suppliers and buyers of coal and other raw materials are widely known in the industry and that their needs and capabilities are readily available to any Crown Coal competitor who contacts the suppliers and buyers.

However, Crown Coal's collected information includes more than simply the identities and current needs and/or capabilities of customers. Crown Coal's collected business information consists of customers' historic needs, capabilities, reliability, payment history, and delivery requirements [doc. no. 73 at ¶¶ 15, 16]. There is no evidence that this historic data, or Crown Coal's

17

projections based upon this historic data, is known or readily available to Crown Coals' competitors. While each supplier or buyer is likely aware of its own historic buying and/or selling data, there is no evidence that they have access to that same information for the other suppliers and buyers. As such, Crown Coal's compiled, historic customer information may be unique and not easily recreated.

Therefore, we cannot say as a matter of law that Crown Coal's compiled customer information does not constitute a trade secret under the PUTSA. Defendants' motion will be denied as to this claim.

### 4.  Plaintiff's conspiracy claim

The elements of a civil conspiracy claim under Pennsylvania law are: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Reading Radio, 833 A.2d at 213 (citing Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979)).[8]

As discussed above, material issues of fact remain in

---

[8] Similarly, the elements of a civil conspiracy claim under Ohio law are: (1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. In re Nat'l Century Fin. Enters., Inc., Inv. Litig., 541 F.Supp.2d 986, 1016 (S.D. Ohio 2007)(citing Universal Coach, Inc. v. New York City Transit Auth., Inc., 629 N.E.2d 28, 33 (Ohio Ct. App. 1993)).

dispute as to whether defendants breached their duty of loyalty to Crown Coal, interfered with Crown Coal's relationship with Colcarbon, and misappropriated any Crown Coal trade secrets. Consequently, material issues of fact remain as to whether defendants committed an unlawful act or committed a lawful act by unlawful means. Defendants' motion for summary judgment as to Crown Coal's conspiracy claim will, therefore, be denied.

### 5. Plaintiff's conversion claim

The elements of the tort of conversion under Pennsylvania law are: (1) the deprivation of another's right in, or use or possession of, property, (2) without the owner's consent, and (3) without lawful justification. <u>Universal Premium Acceptance Corp. v. York Bank and Trust Co.</u>, 69 F.3d 695, 704 (3d Cir. 1995).[9] Crown Coal alleges that defendants have refused to return the Crown Coal furniture used by defendants in the Willoughby office. Defendants respond that Crown Coal has failed to demand for the return of the furniture and has, instead, engaged in negotiations for the sale of the furniture to defendants.

There is no dispute that Crown Coal owns the furniture in question and that defendants Taplin and Hoyt continue to possess

---

[9]

The elements of a claim for conversion under Ohio law are similar: (1) the defendant exercised dominion or control, (2) over the plaintiff's property, and (3) in a manner inconsistent with the plaintiff's rights of ownership. <u>Jarupan v. Hanna</u>, 878 N.E.2d 66, 72 (Ohio Ct. App. 2007).

19

the furniture. Whether Crown Coal has impliedly consented to defendants' possession by failing to demand the return of the furniture or by negotiating the sale of the furniture is a disputed issue of fact. Defendants' motion as to this claim will, therefore, be denied.

### 6. Plaintiff's Computer Fraud and Abuse Act Claim

The Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, is a criminal statute which penalizes unauthorized access to computers. See P.C. Yonkers, Inc. v. Celebrations The Party And Seasonal Superstore, LLC, 428 F.3d 504, 510 (3d Cir. 2005). There is, however, a civil remedy available to "[a]ny person who suffers damage or loss by reason of a violation of" the CFAA. 18 U.S.C. § 1030(g). Section 1030(a)(5)(A) of the CFAA provides a civil remedy where a person "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A). To prove "damage," there must be an "impairment to the integrity or availability of data, ... that [] causes loss aggregating at least $5,000 in value during any 1-year period ... ." 18 U.S.C. § 1030(e)(8)(A).

The parties dispute whether defendants Taplin and Hoyt deleted information from their lap top computers. The parties also dispute wether Crown Coal sustained a loss of $5,000 in restoring the allegedly deleted information [doc. no. 64 at ¶68]. We,

20

therefore, find that material issues of fact exist as to whether defendants Taplin and Hoyt violated section 1030(a)(5)(A) and whether Crown Coal has sustained compensable "damage" under section 1030(e)(8)(A) of the CFAA. Accordingly, defendants' motion will be denied as to this claim as well.

IV. <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion for summary judgment [doc. no. 57] will be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CROWN COAL & COKE COMPANY,           )
                    Plaintiff,       )
                                     )
            v.                       )     Civil Action No. 07-1208
                                     )
                                     )
COMPASS POINT RESOURCES, LLC;        )
JAMES H. HOYT; and COURTNEY          )
O. TAPLIN,                           )
                    Defendants.      )


## ORDER

AND NOW, this **31** day of March, 2009, upon consideration of defendants' motion for summary judgment [doc. no. 57], IT IS HEREBY ORDERED that the motion is DENIED.


BY THE COURT:

_____, J.


cc:        All Counsel of Record