IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CROWN COAL & COKE COMPANY,  )
    Plaintiff,              )
                            )
    v.                      )     Civil Action No. 07-1208
                            )
COMPASS POINT RESOURCES, LLC; )
JAMES H. HOYT; and COURTNEY )
O. TAPLIN,                  )
    Defendants.             )

MEMORANDUM and ORDER

Gary L. Lancaster
District Judge.                                    June 23, 2009

This business dispute stems from the creation of the defendant company, Compass Point Resources, LLC ("Compass Point") by defendants James Hoyt and Courtney Taplin, former employees of plaintiff Crown Coal & Coke Company ("Crown Coal"). Crown Coal alleges that while employed with Crown Coal, defendants Taplin and Hoyt created Compass Point, a competing business, and in doing so diverted Crown Coal customers to Compass Point using Crown Coal's confidential and proprietary business information.

Crown Coal has alleged multiple claims against defendants including: tortious interference with business relations, violation of the Uniform Trade Secrets Acts of Pennsylvania and Ohio, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, civil conspiracy, and conversion against all defendants and a claim for breach of fiduciary duty against defendants Taplin and Hoyt

[doc. no. 14].

Defendants filed a counterclaim against Crown Coal [doc. no. 33]. Defendants contend that Crown Coal failed to pay defendants Taplin and Hoyt commissions for business they secured for Crown Coal and that Crown Coal improperly accessed defendants' computers and obtained confidential information. Defendants assert claims for unjust enrichment, promissory estoppel, breach of contract implied in fact, tortious interference with business relationships, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and libel.

Crown Coal has moved for summary judgment on its own breach of fiduciary duty claim and as to all six (6) of defendants' counterclaims [doc. no. 65].[1] For the reasons set forth below, Crown Coal's motion will be GRANTED in part and DENIED in part.

I. BACKGROUND

In our opinion dated March 31, 2009 [doc. no. 89], disposing of defendants' motion for summary judgment, we set forth the undisputed material facts of this case. We incorporate those facts here. Below, we set forth additional undisputed facts which are material to Crown Coal's motion for summary judgment; these additional facts were not material to defendants' motion for

---

[1] Defendants also moved for summary judgment as to all of Crown Coal's claims [doc. no. 57]. We denied defendant's motion in an order dated March 31, 2009.

2

summary judgment and, therefore, were not included in our March 31, 2009 opinion.

   A.   Defendants' Arrangement With Crown Coal

   Until 2006, the commissions that Crown Coal paid to Taplin and Hoyt were calculated pursuant to an agreed-upon formula [doc. no. 73 at ¶32]. The formula as well as other terms of the defendants' compensation package were governed by an agreement memorialized in a memorandum dated November 17, 2003. The November 17, 2003 memorandum provided:

> This letter will confirm our agreement reached November 10, 2003 in the Pittsburgh office on the compensation package, which is as follows:
>
> Courtney O. Taplin and James H. Hoyt (Cleveland) will combine their efforts in a compensation package effective beginning January 1, 2003. This compensation package is NOT in perpetuity, and can be reviewed semi-annually by Crown Coal & Coke Company (CCC). CCC expects a positive cash flow from its sales personnel at all times.
>
>    A.   CCC will pay CLEVELAND, once CLEVELAND has covered 100% of its expense (in 2002, $360,000.00) plus $200,000.00 more than its expense, 25% of all additional commissions.
>
>         1.   As example, if CLEVELAND's cost to CCC for the year is $360,000.00, then CLEVELAND must return $360,000.00 to cover its cost THEN another $200,000.00 in commissions before the 25% incentive become applicable.
>
>    B.   Salaries for Taplin/Hoyt will remain capped at the present level through 2004 with any Cleveland office increased expenses approved in advance by Charles H. Muse Jr., or Chip Muse or Albert C. Muse.
>
>    C.   A line item will be added on COT's monthly

3

> statement crediting COT income for his work on behalf of WTCO calculated on a 4% commission of total gross revenue*, excluding that received from Mississippi Lime. This is estimated to be +$80,000 for the year 2003. (* "Gross Revenue" is defined as all terminal revenue, including storage charges, less those items defined in "D".)
>
> D. Losses, bad debts, interest expenses, and freight costs included in sales will be deducted from earned commissions.

[Doc. No. 69-2].

In 2006, the parties re-negotiated their agreement. Crown Coal sent defendants Taplin and Hoyt a memorandum dated May 31, 2006 which provided as follows:

> This letter will confirm our agreement reached May 23, 2006 in the Pittsburgh office on the compensation package which is as follows:
>
> Courtney O. Taplin and James H. Hoyt (CLEVELAND) will continue to combine their efforts in a compensation package effective January 1, 2006. This package will be reviewed annually by Crown Coal & Coke Company (CCC)
>
> A. CCC will pay CLEVELAND, once CLEVELAND has covered 100% of its expenses (in 2005, $387,651.99) plus $200,000 more than its expenses, 40% of all additional commissions.
>
> B. Salaries:
>    1. Courtney O. Taplin - 2006 salary increased to $125,800.08 per year from 2005 salary of $100,800.11.
>
>    2. James H. Hoyt - 2006 salary increased to $119,199.96 from 2005 salary of $114,199.96 plus any increases in salary/bonus from IOC/Rio Tinto/QIT.

4

```
Example:   9,583.33 pm x  4 mos = $38,333.32
          10,108.33 pm x  8 mos =  80,866.64
                                 $119,199.96
    or it will be:
          10,108.33 pm x 12 mos = $121,299.96
```

> In additional, CCC will reimburse JHH thru expense account one half of the amount of his Kirkland Country Club dues.
>
> C.  Losses, bad debts, interest expenses and freight costs included in sales will be deducted from earned commissions.

[Doc. No. 67-3]. On August 16, 2006, defendant Taplin sent Charles Muse, Jr. a marked up copy of the parties' previous, November 2003 agreement suggesting changes [doc. no. 69-2]. Defendant Taplin's notes mention, <u>inter alia</u>, applying credit to Cleveland "at such time as Gordon Reid ceases active." <u>Id</u>.

B.  <u>Crown Coal Accesses Defendants' Computers</u>

Soon after defendants Taplin and Hoyt resigned, in May and June of 2007, Crown Coal remotely accessed the laptop computers it had provided to them. In mid-June, Crown Coal retrieved the computers.

When Crown Coal retrieved defendant Hoyt's computer, it contained Crown Coal's business information as well as information belonging to Iron Ore of Canada ("IOC"), for whom defendant Hoyt also served as a consultant.

C.  <u>Crown Coal's September 4, 2007 Letter</u>

On September 4, 2007, Crown Coal sent a letter to Sun Coke Energy, Inc. regarding defendant Taplin's departure. The

letter reads, in pertinent part:

> As you know, Courtney O. Taplin, a Senior Vice President of Crown Coal & Coke Company, has served as Crown Coal's representative for the sale of mid vol coal products from Powhatan Mid-Vol Coal Sales, LLC. You may have heard that Mr. Taplin recently resigned his employment with Crown Coal, in order to start Compass Point Resources LLC.
>
> Crown Coal has entered into an agreement, pursuant to which Mr. Taplin will continue to serve, until further notice, as Crown Coal's agent for the sale of Powhatan's mid vol coal to Sun Coke. Mr. Taplin's transition from employee to agent status with Crown Coal will not otherwise affect any terms or conditions of Crown Coal's business relationship with Sun Coke.

[Doc. No. 67-13].

II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure of material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (internal quotation marks omitted). Similarly, summary judgment is improper so long as the dispute over the material facts

6

is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

To demonstrate entitlement to summary judgment, defendants, as the moving parties, are not required to refute the essential elements of the plaintiff's cause of action. Defendants need only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such evidence, then he is not entitled to a trial, and defendants are entitled to summary judgment as a matter of law.

It is on this standard that the court has reviewed the motion for summary judgment and the response thereto.

III. DISCUSSION

Crown Coal has moved for summary judgment as to its own breach of fiduciary duty claim as well as all of defendants' counterclaims. We will address each claim in turn.

A.  Crown Coal's Breach Of Fiduciary Duty Claim

Crown Coal contends that it is entitled to judgment as a matter of law as to its breach of fiduciary duty claim [doc. no. 65]. Defendants also moved for summary judgment as to Crown Coal's breach of fiduciary duty claim [doc. no. 57]. As set forth in our opinion dated March 31, 2009, material issues of fact remain in dispute as to this claim [doc. no. 89]. Crown Coal's motion will, therefore, be denied as to this claim.

B.  Defendants' Unjust Enrichment Claim

Defendants Taplin and Hoyt have alleged that they pursued business leads for Crown Coal, which resulted in sales of coal and coke for Crown Coal worth hundreds of millions of dollars, for which defendants have not been paid the "promised profit sharing." [Doc. No. 33 at ¶¶ 46, 48]. According to defendants, pursuant to the doctrine of unjust enrichment, they are "entitled to recover the amount equivalent to the value of the benefits conferred upon Crown Coal." Id. at ¶49.

Unjust enrichment is an equitable doctrine. Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. 1995). The elements of unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Id.(citations

omitted). The most important factor to be considered in applying the doctrine is whether the enrichment of the defendant is unjust. Id.

The doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract. Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006).

> [T]his bright-line rule ... embodies the principle that parties in contractual privity ... are not entitled to the remedies available under a judicially-imposed quasi-contract (i.e., the parties are not entitled to restitution based upon the doctrine of unjust enrichment) because the terms of their agreement (express and implied) define their respective rights, duties, and expectations.

Id. (citations and quotations omitted).

Crown Coal argues that the terms of the employment relationship between Taplin, Hoyt and Crown Coal were governed by an express agreement that was memorialized in a memorandum dated May 31, 2006 [doc. no. 67-3]. Therefore, according to Crown Coal, the doctrine of unjust enrichment does not apply [doc. no. 66 at 51].

Defendants contend that there was no agreement between them and Crown Coal because they never accepted the terms set forth in the May 2006 memorandum [doc. no. 72 at 27]. We find that regardless of whether defendants accepted the terms in the May 2006 memorandum, an agreement existed between defendants and Crown Coal.

Initially, we note that defendants have alleged in their counterclaim that an agreement existed between them and Crown Coal regarding profit sharing and that Crown Coal failed to abide by that agreement:

> As part of the business arrangement with Hoyt and Taplin, Crown Coal agreed to remit to Hoyt and Taplin a share of profits for any and all sale agreements that Hoyt and Taplin arranged, and from which Crown Coal derived payment.

[Doc. No. 33 at ¶11]. Defendants repeatedly allege that Crown Coal has failed to pay them the "promised profit sharing." Id. at ¶48.

More importantly, the evidence shows that an agreement regarding commissions existed. Defendants do not dispute that until 2006, the commissions that Crown Coal paid to Taplin and Hoyt were calculated pursuant to an agreed-upon formula [doc. no. 73 at ¶32]. The formula, as well as other terms of the defendants' compensation package, was governed by an agreement memorialized in a memorandum dated November 17, 2003 [doc. no. 69-2]. In 2006, the parties re-negotiated their agreement. In a memorandum from Crown Coal to defendants Taplin and Hoyt dated May 31, 2006, Crown Coal states: "This letter will confirm our agreement reached May 23, 2006 in the Pittsburgh office on the compensation package ... ." [Doc. No. 67-3].

Defendants contend that they never agreed to the May 2006 terms. On August 16, 2006, defendant Taplin sent Charles Muse, Jr. a marked up copy of the parties' previous, November 2003 agreement

10

suggesting changes [doc. no. 69-2]. According to defendants, the August 16, 2006 notes constituted a counter-offer to the May 2006 terms. Therefore, according to defendants, there was no May 2006 agreement.

However, even if the May 2006 terms were not accepted by defendants, an agreement still existed between the parties. If the August 16, 2006 note constituted a counter-offer to the May 2006 terms, as defendants contend, then the parties' previous, November 2003 agreement was still in effect. As such, one of two agreements was in effect in 2006: the one memorialized in the November 2003 memorandum or the one memorialized in the May 2006 memorandum. Therefore, defendants' claim for unjust enrichment fails as a matter of law. See Wilson Area Sch. Dist., 895 A.2d at 1254.

C. Defendants' Promissory Estoppel Claim

Defendants have alleged a promissory estoppel claim also based upon Crown Coal's alleged failure to pay them promised profit sharing for sales of coal and coke they had arranged. Specifically, defendant Taplin claims that Crown Coal promised to credit defendants' Cleveland office for all of Gordon Reid's accounts upon his retirement [doc. no. 72 at 27].

Crown Coal responds, without citing to the record, that it did credit defendants' Cleveland office with Mr. Reid's accounts after Mr. Reid retired in September of 2006 [doc. no. 66 at 53]. Because Crown Coal has failed to set forth any facts of record

11

proving that it did credit defendants as promised, issues of fact remain in dispute as to defendants' promissory estoppel claim. Crown Coal's motion will, therefore, be denied as to this claim.

D. <u>Defendants' Breach Of Implied Contract Claim</u>

Defendants claim that Crown Coal breached an implied contract of employment with them. This claim is also based upon Crown Coal's alleged failure to pay Hoyt and Taplin promised profit sharing for sales of coal and coke they had arranged. Specifically, defendants allege that they "reasonably expected to receive a share of profits [from] the sales of coke and coal that resulted from their provision of services" and that Crown Coal "unilaterally reduced and rescinded these payments after Hoyt and Taplin had provided their services." [Doc. No. 33 at ¶¶ 60, 63].

"An express contract is one where the parties specifically express the terms of the agreement, either orally or in writing." <u>Crawford's Auto Ctr., Inc. v. Commw. of Pa.</u>, 655 A.2d 1064, 1066 (Pa. Commw. Ct. 1995) (citations omitted). A contract implied-in-fact arises when parties agree upon the obligation to be incurred, but their intention is not expressed in words and is, instead, inferred from their actions in light of the surrounding circumstances. <u>Id</u>. (citations omitted).

As stated above, one of two express agreements was in effect in 2006: the one memorialized in the November 2003 memorandum or the one memorialized in the May 2006 memorandum. As

12

such, defendants' claim should be for breach of contract, not breach of implied contract.[2] Defendants' breach of implied contract claim must, therefore, be dismissed. Crown Coal's motion will be granted as to this claim.

E. <u>Defendants' Tortious Interference Claim</u>

Defendants contend that Crown Coal tortiously interfered with defendant Hoyt's relationship with IOC. Specifically, defendants claim that when Crown Coal retook possession of their computers, Crown Coal obtained defendant Hoyt's confidential proprietary business information related to IOC and that Crown Coal has refused to return said information [doc. no. 33 at 70- 72].

The elements of a claim for tortious interference with contractual relations are: (1) the existence of a contractual relation between the plaintiff and a third party; (2) purposeful action of the defendant specifically intended to harm the existing relation; (3) the absence of privilege to do so; and (4) resulting damages. See Reading Radio, Inc. v. Fink, 833 A.2d 199, 211 (Pa. Super. 2003).

Crown Coal contends that this claims fails because defendant Hoyt cannot prove damages. We agree. During his deposition, defendant Hoyt testified that, despite Crown Coal's

---

[2] We note that defendants have made no attempt to alternatively pursue a breach of express contract claim. In their response to Crown Coal's motion for summary judgment, defendants do not argue that Crown Coal breached any express agreement [doc. no. 72 at 26-27].

13

possession of IOC's information, he was still able to perform his duties for IOC:

> Q: ... Did you talk to IOC and tell them Crown Coal has some of my information and, as a result of that, I'm not able to properly perform my duties for IOC?
>
> A: No, because I can properly perform my duties for IOC. ...
>
> Q: So the fact that you don't have this information is not interfering with your ability to perform your work for IOC?
>
> A: No, it is not. ...

[Doc. No. 67-4 at 197]. Defendant Hoyt further admitted that his reputation with IOC was "good" prior to returning the computers to Crown Coal and was still "good" after returning the computers to Crown Coal. Id. at 198.

Despite his testimony, defendant Hoyt claims to have suffered damage to his reputation. He articulated the damage to his reputation as follows:

> Because whereas before I could go to my computer and generate basic information, historic information, I now have to go to IOC and have that staff up there redo it, whereas I could have done it in the past on my own.
>
> So, therefore, it is a waste of time, it is a waste of other people's time, and to me, it is my reputation as I perceive it that's important. That's how I look at it. It is my responsibility to get that material back so I'm more efficient. Whether or not they recognize my lack of efficiency as a result of this is irrelevant. So it is my interpretation of how I do my job and the efficiency under which I do it that I feel has

been damaged.

Id. at 198-99. This reasoning is not sufficient to prove damages. Defendant Hoyt must prove "actual harm to [his] reputation." See Pawlowski v. Smorto, 588 A.2d 36, 40 (Pa. Super. 1991) ("actual damages must result from the defendant's conduct before recovery can be had") (citing Birl v. Phila. Elec. Co., 167 A.2d 472, 474 (Pa. 1960)).

Defendant Hoyt has failed to come forward with evidence of actual harm to his reputation. Crown Coal's motion will, therefore, be granted as to defendants' claim of intentional interference with contractual relations.

F. Defendants' Computer Fraud and Abuse Act Claim

The Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, is a criminal statute which penalizes unauthorized access to computers. See P.C. Yonkers, Inc. v. Celebrations The Party And Seasonal Superstore, LLC, 428 F.3d 504, 510 (3d Cir. 2005). There is, however, a civil remedy available to "[a]ny person who suffers damage or loss by reason of a violation of" the CFAA. 18 U.S.C. § 1030(g). "A civil action for a violation ... may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV) or (V) of subsection (c)(4)(A)(i)." Id. The subclauses of subsection (c)(4)(A)(i) provide in pertinent part:

>      (I) loss to 1 or more persons during any 1-
>      year period ... aggregating at least $5,000 in
>      value;
>
>      (II) the modification or impairment, or
>      potential modification or impairment, of the
>      medical examination, diagnosis, treatment, or
>      care of 1 or more individuals;
>
>      (III) physical injury to any person;
>
>      (IV) a threat to public health or safety;
>
>      (V) damage affecting a computer used by or for
>      an entity of the United States Government in
>      furtherance of the administration of justice,
>      national defense, or national security[.]

18 U.S.C. § 1030(c)(4)(A)(i).

The only potentially applicable factor here is factor (I), "loss" during any one year period aggregating at least $5,000 in value.

The term "loss" is defined as follows:

> [A]ny reasonable cost to any victim, including
> the cost of responding to an offense,
> conducting a damage assessment, and restoring
> the data, program, system, or information to
> its condition prior to the offense, and any
> revenue lost, cost incurred, or other
> consequential damages incurred because of
> interruption of service[.]

18 U.S.C. § 1030(e)(11).

Defendants Taplin and Hoyt allege that Crown Coal violated the CFAA when it remotely accessed their computers in May and June of 2007 [doc. nos. 33 at ¶83; 73 at ¶¶ 235, 236]. With regard to damages, without citing to the record or to any case law, defendants claim, "Colcarbon's damages from Crown Coal's access to

16

its communications with clients after May 31, 2007, exceeded $5,000.00 in losses of potential business opportunities." [Doc. No. 72]. Defendants' alleged loss of potential business opportunities is not the type of "loss" contemplated by the statute.

According to the CFAA, lost "revenue" constitutes "loss" if it is incurred "because of interruption of service." 18 U.S.C. § 1030(e)(11). Therefore, if defendants had lost revenue because their computers were inoperable, that would be the type of lost revenue contemplated by the statute. Defendants, however, are not claiming to have lost money because their computers were inoperable. Rather, they are claiming to have been denied potential business opportunities as a result of Crown Coal's unauthorized access. This alleged loss of business opportunities is simply not compensable under the CFAA. See Nexans Wires S.A. v. Sark-USA, Inc., 319 F.Supp.3d 468, 477 (S.D.N.Y. 2004), aff'd, 166 Fed. App. 559 (2nd Cir. 2006) (holding that lost revenue due to lost business opportunity does not constitute "loss" under the CFAA); Chas S. Winner, Inc., v. Polistina, No. 06-4865, 2007 WL 1652292, *4 (D.N.J. June 4, 2007) (holding that loss under the CFAA must pertain to a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted). Crown Coal's motion for summary judgment will, therefore, be granted as to this claim.

G. <u>Defendants' Libel Claim</u>

Defendants' sixth and final counterclaim is one for libel. Defendants allege that on or about September 4, 2007, Crown Coal published false statements regarding defendant Taplin [doc. no. 33 at ¶86]. Crown Coal argues that defendants' libel claim must be dismissed because: (1) the allegedly libelous communication was not libelous; and (2) defendant Taplin cannot establish any damages as a result of the communication at issue [doc no. 66 at 60-61].

Defendants have, apparently, abandoned this claim as they have not responded to Crown Coal's argument [doc. no. 72]. When an adverse party fails to respond to a summary judgment motion, Rule 56(e) requires the court to grant the motion "if appropriate." <u>Anchorage Assocs. v. V.I. Bd. of Tax Review</u>, 922 F.2d 168, 175 (3d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). We find summary judgment appropriate here.

"Libel is the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred, contempt or ridicule." <u>Tucker v. Phila. Daily News</u>, 848 A.2d 113, 123-24 (Pa. 2004) (citations omitted). In an action for defamation or libel, the plaintiff has the burden of proving the defamatory character of the communication. <u>Id</u>. (citing 42 Pa. Con. Stat. Ann. § 8343(a)). If the challenged publication is not capable of a defamatory meaning, the claim should be

18

dismissed. Id.

The communication at issue is a September 4, 2007 letter from Crown Coal to Sun Coke Energy, Inc. [Doc. No. 67-13]. Nothing in the letter, set forth in pertinent part above, tends to blacken defendant Taplin's reputation or expose him to public hatred, contempt or ridicule. The letter contains no defamatory statements. Defendant Taplin's claim for libel must, therefore, be dismissed.

IV. CONCLUSION

For the foregoing reasons, Crown Coal's motion for summary judgment [doc. no. 65] will be granted in part and denied in part. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CROWN COAL & COKE COMPANY, )
     Plaintiff, )
     )
    v. )   Civil Action No. 07-1208
     )
COMPASS POINT RESOURCES, LLC; )
JAMES H. HOYT; and COURTNEY )
O. TAPLIN, )
     Defendants. )

ORDER

AND NOW, this 23 day of June, 2009, upon consideration of plaintiff's motion for summary judgment [doc. no. 65], IT IS HEREBY ORDERED that the motion is GRANTED in part and DENIED in part. Plaintiff's motion is GRANTED as to the following counterclaims of defendants: unjust enrichment; breach of implied contract; tortious interference with contractual relations; Computer Fraud and Abuse Act claim, 18 U.S.C. § 1030; and libel. Plaintiff's motion is DENIED as to defendants' counterclaim of promissory estoppel and as to plaintiff's breach of fiduciary duty claim.

BY THE COURT:

_____, J.

cc: All Counsel of Record