IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
CROWN COAL & COKE COMPANY,      )
        Plaintiff,              )
                                )
     v.                         )    Civil Action No. 07-1208
                                )
COMPASS POINT RESOURCES, LLC;   )
JAMES H. HOYT; and COURTENAY    )
O. TAPLIN,                      )
        Defendants.             )
```

MEMORANDUM ORDER

Gary L. Lancaster
Chief District Judge.                         January 28, 2010

This business dispute stems from the creation of the defendant company, Compass Point Resources, LLC ("Compass Point"), by defendants James Hoyt and Courtenay Taplin, former employees of plaintiff Crown Coal & Coke Company ("Crown Coal"). Crown Coal alleges that while employed by Crown Coal, defendants Taplin and Hoyt created Compass Point, a competing business, and in doing so diverted Crown Coal customers to Compass Point using Crown Coal's confidential and proprietary business information. Crown Coal alleges tortious interference with business relations, violation of the Uniform Trade Secrets Acts of Pennsylvania and Ohio, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, civil conspiracy, and conversion against all defendants and a claim for breach of fiduciary duty against defendants Taplin and Hoyt [Doc. No. 14]. Defendants have filed a counterclaim asserting promissory

estoppel.[1]

On December 22, 2008, the court ordered the parties to submit briefs and statements of material fact on the issues of personal jurisdiction and venue.[2] The court has reviewed their submissions and is prepared to issue a ruling. For the following reasons, the court finds that it has personal jurisdiction over defendants and declines to transfer venue to the Northern District of Ohio.[3]

I. Background

In our opinions dated March 31, 2009 [Doc. No. 89], disposing of defendants' motion for summary judgment, and June 23, 2009 [Doc. No. 90], granting in part and denying in part

---

[1] The court granted plaintiff's motion for summary judgment on defendants' counterclaims of unjust enrichment, breach of contract implied in fact, tortious interference with business relationships, violation of the Computer Fraud and Abuse Act, and libel. [Doc. No. 90].

[2] The court also requested briefs on the issue of choice of law. However, because we subsequently held that Pennsylvania law governed the dispute [Doc. No. 89], that issue will not be discussed again here.

[3] The court previously orally resolved the issues of personal jurisdiction and venue at a status conference on July 13, 2008. At that hearing, the court stated: "[B]ased on what I'm hearing, clearly, there is personal jurisdiction over the two named people. And what I'm hearing, the company is just their alter ego. I mean, I have jurisdiction over them clearly. I'm not going to send this to Ohio." We undertake this analysis now to supplement our finding on a more fully developed record.

plaintiff's motion for summary judgment, we set forth the undisputed material facts of this case. We incorporate those facts here. In addition, we set forth undisputed facts material to the issues of personal jurisdiction and venue.

Plaintiff, Crown Coal, is a Pennsylvania corporation with its principal place of business in Pittsburgh. Plaintiff sells coal, coke and other raw materials to manufacturing companies. In 1989, Crown Coal hired defendant Taplin as vice president of sales. In 1998, the company hired defendant Hoyt as a vice president. As part of their responsibilities, defendants solicited customers, sold raw materials, and interacted with raw material suppliers and cargo companies to arrange for the delivery of raw materials to customers.

While employed by Crown Coal, defendants worked out of an office in Willoughby, Ohio, located east of Cleveland. Both Hoyt and Taplin participated in frequent conference calls with Crown Coal's Pittsburgh office, and sent weekly written notes regarding their activities to the Pittsburgh office. Defendants traveled to Pittsburgh three to four times a year. In addition, defendants Hoyt and Taplin conducted a significant amount of plaintiff's business with companies located in Western Pennsylvania, and made several trips a year to the region while employed by Crown Coal to solicit business.

On January 29, 2007, while still employed by Crown Coal,

defendants filed articles of organization with the Ohio Secretary of State for a new company called Compass Point Resources. Compass Point also sells coal, coke and other raw materials, and admits to competing with Crown Coal. Defendants continued to work for Crown Coal until May 31, 2007, when they resigned to work for Compass Point.

Plaintiff alleges that during the time defendants were employed by both Compass Point and Crown Coal, defendants used its confidential and proprietary information and accessed its headquarters for accounting and business services support. Plaintiff also alleges that defendants used confidential and proprietary business information to secretly negotiate a sales agency agreement on behalf of Compass Point with Colcarbon, a Columbia-based coke producer and long-term supplier of coke to Crown Coal. Defendants never informed plaintiff of their negotiations. Colcarbon and Compass Point entered into a written sales agency agreement on April 12, 2007, while defendants were still employed by Crown Coal. Compass Point continues to regularly solicit business from Pennsylvania corporations such as U.S. Steel, and both defendants continue to visit Western Pennsylvania for business purposes.

## II. Discussion

Defendants contend that this court lacks personal

jurisdiction over defendants because their contacts with this forum were made in their capacity as employees of plaintiff and Compass Point.[4] Defendants also ask that the case be transferred to the Northern District of Ohio. Plaintiff disagrees, contending that the court does have personal jurisdiction and that venue properly rests in the Western District of Pennsylvania. For the reasons to follow, we find personal jurisdiction exists and that venue is proper in this district.

A.  Personal jurisdiction

Once personal jurisdiction is challenged, the burden rests upon the plaintiff to establish it. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). To establish personal jurisdiction, plaintiff must go beyond the pleadings and make an affirmative proof that jurisdiction is proper through "affidavits or other competent evidence." Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996).

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity, as here, "must undertake a two-step inquiry: 1) the court must apply the relevant state

---

[4] Defendants have not waived their right to assert lack of jurisdiction and venue because those defenses were raised in their first responsive pleading and restated in the answer. See Fed. R. Civ. P. 12(h)(1); In re Arthur Treacher's Franchise Litig., 92 F.R.D. 398, 414 (E.D. Pa. 1981); Neifeld v. Steinberg, 438 F.2d 423, 431 n. 17 (3d Cir. 1971).

long-arm statute to see if it permits the exercise of personal jurisdiction; 2) the court must apply the precepts of the Due Process Clause of the Constitution." IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

The Pennsylvania long arm statute permits the courts of Pennsylvania to exercise personal jurisdiction over nonresident defendants to "fullest extent allowed under the Constitution of the United States . . . based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987) (quoting 42 Pa. Cons. Stat. Ann. § 5322 (b)); see also Dollar Sav. Bank v. First Sec. Bank, N.A., 746 F.2d 208, 211 (3d Cir. 1984). The Due Process Clause of the Fourteenth Amendment, however, "limits the reach of long-arm statutes so that a court may not assert personal jurisdiction over a nonresident defendant who does not have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Gorman v. Jacobs, 597 F. Supp.2d 541, 546 (E.D. Pa. 2009) (quoting Provident Nat'l Bank, 819 F.2d at 436-37).

Despite this limitation, the Due Process clause permits courts to exercise two types of personal jurisdiction over a defendant - general and specific. See Mellon Bank (East) PSFS, Nat'l Ass'n. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).

General jurisdiction is the broader of the two types, and is supported where a defendant has maintained systematic and continuous contacts with the forum state. See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)). If a party is subject to the general jurisdiction of a state, that party "can be called to answer any claim . . . regardless of whether the subject matter of the cause of action has any connection to the forum." Mellon Bank, 960 F.2d at 1221.

Absent "continuous and systematic" contacts, plaintiff may rely on "specific jurisdiction" where the cause of action is related to or arises out of the defendant's contacts with the forum. Miller Yacht, 384 F.3d at 96; IMO Industries, 155 F.3d at 259 n.2.

However, even when contacts between a defendant and the forum state exist, as a general rule, "[i]ndividuals performing acts in a state in their corporate capacity 'are not subject to the personal jurisdiction of the courts of that state for those acts.'" Nat'l Precast Crypt Co. v. Dy-Core of Pa., Inc., 785 F. Supp. 1186, 1191 (W.D. Pa. 1992) (quoting Bowers v. NETI Technologies, Inc., 690 F. Supp. 349, 357 (E.D. Pa. 1988)). This is known as the corporate or fiduciary shield doctrine. It may be overcome in two ways: 1) a corporate agent may be held personally liable for torts done in a corporate capacity within the forum; and 2) by violating

a statutory scheme that provides for personal, as well as corporate, liability. <u>Nat'l Precast Crypt Co.</u>, 785 F.Supp. at 1191.

Here, the court finds that defendants maintained and continue to maintain systematic and continuous contacts with Pennsylvania and that their claims that they are protected by the corporate shield doctrine lack merit. As noted, the record establishes, <u>inter alia</u>, that: defendants worked for Pittsburgh-based Crown Coal; they traveled frequently to the state for business purposes; Crown Coal paid their salaries and furnished their offices; and they maintained weekly contact with the Pittsburgh office. These facts, if taken alone, would not extend general jurisdiction over defendants because their contacts arose out of their employment by Crown Coal.

However, the record also shows that defendants commenced their allegedly tortious conduct while still employed by Crown Coal. Defendants Hoyt and Taplin solicited business from U.S. Steel, headquartered in Pittsburgh, while they still worked for Crown Coal. Compass Point entered into an agreement with Colcarbon, a customer of Crown Coal, while Hoyt and Taplin were still employed by Crown Coal. This action had a foreseeable detrimental effect on Crown Coal, a Pennsylvania company. <u>See</u> <u>Techno Corp. V. Dahl Ass'n., Inc.</u>, 535 F. Supp. 303, 309 (W.D. Pa. 1982) (finding that "were certainly aware that [plaintiff] was a

Pennsylvania corporation. Therefore, at the time these defendants took what is alleged to be an intentional act it was clearly foreseeable that their actions would have a direct impact in Pennsylvania.").

Furthermore, Compass Point, through Hoyt and Taplin, continues to do and solicit business with Pennsylvania-based corporations such as U.S. Steel. They have traveled to this forum to meet with executives of U.S. Steel. They have also retained a former U.S. Steel executive who resides in Pittsburgh to provide consulting services. As a result, we find that defendants may be held personally liable for torts done in a corporate capacity within this forum, and that they have clearly had systematic and continuous contact with this forum such that general jurisdiction may be properly asserted.[5]

For all of these reasons, the court finds that it has personal jurisdiction over the defendants.

---

[5] The court has specific jurisdiction over the defendants as well. Here, plaintiff's claims are at least partially based on defendants' conduct that occurred while defendants were still employed with plaintiff. As noted, defendants have continued to do business with companies in Western Pennsylvania since leaving Crown Coal. Furthermore, defendants have not shown that the exercise of such jurisdiction would be unreasonable. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993)

9

B. Venue and transfer

Questions of venue are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995). "Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper. Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." Id.

In deciding whether to transfer this case, we are not limited to the factors enumerated in section 1404(a), but are allowed to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara, 55 F.3d at 879 (citation omitted).

We are allowed to consider factors such as plaintiff's forum preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses (to the extent that the witnesses may be unavailable for trial in one of the fora), and the location of books and records (to the extent that they could not be produced in the alternative forum). Id. Other factors that courts may take into account include enforceability of the judgment, practical considerations that could make the trial easy, expeditious or inexpensive, the relative

administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases. Id.

Here, after weighing all the factors, the court finds that venue is proper in the Western District of Pennsylvania. Plaintiff's choice of forum is to be given substantial deference. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). As already noted, defendants location in Northeastern Ohio is not far from this forum, and defendants have regularly traveled to Pittsburgh in the past and currently as part of their business. For these reasons, the court declines to transfer this case to the Northern District of Ohio.

III. Conclusion

In conclusion, personal jurisdiction and venue are proper in the Western District of Pennsylvania.

BY THE COURT:

_____, Chief J.

cc: All counsel of record