```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA


CROWN COAL & COKE COMPANY,

              Plaintiff,
                                         Civil Action
     vs.
                                         No. 07-1208
COMPASS POINT RESOURCES, LLC,
et al.,

              Defendants.
_____


         Transcript of trial proceedings held on Thursday,
May 27th, 2010, United States District Court, Pittsburgh,
Pennsylvania, before the Honorable Gary L. Lancaster, U.S.
District Court Chief Judge.



APPEARANCES:

For the Plaintiff:        KURT MILLER, Esq.
                          JEFFREY GORDON, Esq.


For the Defendant:        JAMES KUREK, Esq.
                          CHRISTOPHER KUHN, Esq.




Court Reporter:           Shirley Ann Hall, RDR, CRR
                          6260 U.S. Courthouse
                          Pittsburgh, PA 15219
                          (412) 765-0408




Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.
```

```
 1                      P R O C E E D I N G S
 2                            * * * * *
 3              (Proceedings held in chambers.)
 4              (Counsel and Judge Lancaster present via telephone.)
 5              THE COURT:  Okay.  At 9:40 this morning we received
 6   a question.  It reads as follows:  On Page 20 of the final
 7   jury instructions, Lines 435 to 436, what does the word,
 8   quote, enjoin, end quote, mean in this context?
 9              Do you guys have your final instructions there?
10              MR. MILLER:  I don't have them in front of me,
11   Your Honor.
12              THE COURT:  Well, let me see.  What the instructions
13   at those lines say is this.  The instructions say -- the
14   instruction reads currently that the employer has the right to
15   enjoin use of the trade secret.  That's how it reads now.
16              I propose submitting to the jury the answer:  The
17   word "enjoin" means to stop or prevent.  Therefore, the final
18   jury instructions at Lines 435 and 436 would read:
19   Parenthesis, three, end paren, that the employer has the right
20   to stop or prevent someone else from using the trade secret.
21              MR. KUREK:  I am fine with that, Your Honor.
22              MR. MILLER:  That's fine.
23              THE COURT:  That's how we will send it back.  Stay
24   close.
25              MR. KUREK:  Okay, bye.
```

1                 MR. MILLER:  Bye.
2                 (Recess taken.)
3                 (In conference room, with counsel appearing by
4     telephone.)
5                 MR. PALUS, DEPUTY CLERK:  Okay, counsel.
6     Judge Lancaster is here.  We're ready to begin our conference
7     call.
8                 THE COURT:  We have the court reporter here.  At
9     1:10 p.m. I received the following:  For Question No. 2 on the
10    verdict form, are we permitted to have each Defendant pay a
11    different amount if we happen to find both Defendants liable?
12                Now, I don't know if you have a verdict form with
13    you, but this is how it reads.  The first question on the
14    verdict form was:  Question No. 1:  Under duty of loyalty, do
15    you find that Crown Coal has proven by a preponderance of the
16    evidence that Defendants have breached their duty of loyalty
17    to Crown Coal while employed by Crown coal?
18                And then under that we had James Hoyt, yes or no;
19    Courtenay Taplin, yes or no.
20                Now, that was Question No. 1, so they could find for
21    or against either one of them or both.
22                But Question No. 2 reads:  Compensatory damages for
23    the breach of duty of loyalty.  Question No. 2:  If you
24    answered yes to question one, how much must Mr. Hoyt and/or
25    Mr. Taplin repay Crown Coal for salary, commissions, benefits

1   and other compensation they earned during their breach of
2   loyalty?
3          And the question is:  Again, for question two, that
4   is how much:  On the verdict form are we permitted to have
5   each Defendant pay a different amount if we happen to find
6   both Defendants liable?
7          Plaintiff?
8          MR. MILLER:  Yes.
9          THE COURT:  You think the answer is yes?
10         MR. MILLER:  I'm sorry.  If you'd tell me the
11  question again, the question you had?
12         THE COURT:  Well, my question is what is your
13  response?  Do you have a suggested answer whether they are
14  permitted to -- each Defendant pay a different amount if we
15  happen to find both Defendants liable?  If they're joint and
16  severally liable, then the answer would be no; but if they're
17  individually liable, the answer has to be yes because I think
18  there's clearly testimony on the record that they got paid
19  different amounts.  They had a different salary.
20         MR. MILLER:  Right, right.
21         THE COURT:  And this question is to reimburse Crown
22  Coal for --
23         MR. MILLER:  So -- I'm sorry, Your Honor.
24         THE COURT:  -- for the salaries, commissions,
25  benefits, and other compensation while they were in breach.

1           MR. MILLER:  So Plaintiff's position is yes, they
2   can pay different amounts.
3           THE COURT:  Yes.
4           From defense?
5           MR. KUREK:  And your position is, Kurt, it's not
6   joint and several?
7           MR. MILLER:  Well, because there are different
8   amounts that they would need to repay, my position is they
9   could repay different amounts.
10          MR. KUREK:  So -- but I want to follow that through
11  So if there were a verdict that says Mr. Taplin pays X and
12  Mr. Hoyt pays Y, then there's a judgment against Mr. Taplin
13  for X and Mr. Hoyt for Y.
14          MR. MILLER:  Right.
15          MR. KUREK:  I would agree with that.
16          THE COURT:  I think they're right on this issue
17  anyway.  That may not hold true with misappropriation of trade
18  secrets and the like, but I think on this question where the
19  issue is how much do you have to repay for having breached
20  your duty of fiduciary duty, I think the answer to that is
21  yes.
22          So this is what I propose as an answer:  Yes, you
23  may award different amounts if you answered yes as to each
24  Defendant in question one.  In that case question number two
25  will read:  Question new two:  If you answered yes as to both

```
 1  Defendants in question number one, how much must Mr. Hoyt
 2  and/or Mr. Taplin repay Crown Coal for salary, commission,
 3  benefits and other compensation they earned during their
 4  breach of loyalty?
 5             And then it says James Hoyt with a dollar sign and a
 6  line; Courtenay Taplin, dollar sign and a line.  So we would
 7  substitute this question number two for the one that was
 8  originally submitted.
 9             MR. MILLER:  That's fine, Your Honor.
10             THE COURT:  Okay.
11             MR. KUREK:  That's fine, yes.
12             THE COURT:  All right, I will send it back now.
13             MR. MILLER:  Okay.
14             MR. KUREK:  Okay.
15             THE COURT:  Thanks.
16             (Recess taken.)
17             (In open court, with jury seated.)
18             THE COURT:  Who is your foreperson?
19             Ma'am, I understand you have reached a verdict?
20             JUROR NO. 3:  Yes.
21             THE COURT:  Hand it to Mr. Palus, please.
22             (Verdict given to bailiff, then given to the Court.)
23             THE COURT:  Mr. Palus, publish the verdict, please.
24             MR. PALUS, DEPUTY CLERK:  Yes, Your Honor.
25             And now this 27$^{th}$ day of May, 2010, the jury
```

1  empaneled in the case of Crown Coal & Coke Company vs. Compass
2  Point Resources, LLC, James H. Hoyt and Courtenay O. Taplin at
3  Civil Action No. 07-12008 returns the following verdict.
4          As to duty of loyalty, do you find that Crown Coal
5  has proven by a preponderance of the evidence that Defendants
6  have breached their duty of loyalty to Crown Coal while
7  employed by Crown Coal?  As to James Hoyt, yes.  As to
8  Courtenay Taplin, yes.
9          As to compensatory damages on breach of duty of
10 loyalty, if you answered yes as to both Defendants in Question
11 No. 1, how much must Mr. Hoyt and/or Mr. Taplin repay Crown
12 Coal for salary, commission, benefits and other compensation
13 they earned during their breach of loyalty?  As to James Hoyt,
14 $7,880.25; as to Courtenay Taplin, $23,640.75.
15         As to tortious interference with business relations,
16 do you find that Crown Coal has proven by a preponderance of
17 the evidence that Defendants tortiously interfered with Crown
18 Coal's business relations with Colcarbon?  As to James Hoyt,
19 yes.  As to Courtenay Taplin, yes.  As to Compass Point
20 Resources, LLC, yes.
21         As to misappropriation of trade secrets, do you find
22 that Crown Coal has proven by a preponderance of the evidence
23 that Defendants misappropriated Crown Coal's trade secrets?
24 As to James Hoyt, yes.  As to Courtenay Taplin, yes.  As to
25 Compass Point Resources, LLC, no.

1            As to civil conspiracy, do you find that Crown Coal
2   has proven by full, clear and satisfactory evidence that both
3   Mr. Hoyt and Mr. Hat engaged in an unlawful civil conspiracy?
4   Answer:  Yes.
5            If you answered yes, on which claims did Mr. Hoyt
6   and Mr. Taplin engage in conspiracy?  As to breach of duty of
7   loyalty, yes.  As to tortious interference, yes.  As to
8   misappropriation of trade secrets, yes.
9            As to compensatory damages for all other claims, do
10  you award Crown Coal damages for Compass Point's sale of
11  Colcarbon coke by Mr. Hoyt and Mr. Taplin while still employed
12  by Crown Coal but invoiced by Colcarbon after they left Crown
13  Coal?  Answer, yes.  The amount of damages:  $1,213,439.58.
14           Do you award Crown Coal damages for profits it lost
15  to Compass Point for the Colcarbon account after May 31st,
16  2007, through today?  Answer, no.
17           Do you award damages to Crown Coal for future lost
18  profits for losing the Colcarbon account?  Answer, no.
19           Total compensatory damages, $1,244,960.58.
20           As to punitive damages, do you award punitive
21  damages?  Answer, yes.  Amount, $925,000.
22           As to promissory estoppel, do you find that Mr. Hoyt
23  and Mr. Taplin have proven their promissory estoppel claim for
24  unpaid commissions due by a preponderance of the evidence?
25  Answer, no.

```
 1              THE COURT:  Mr. Palus, you will poll the jury,
 2  please.
 3              MR. PALUS, DEPUTY CLERK:  Yes, Your Honor.
 4              Juror number one, please stand.  Ma'am, was the
 5  verdict I have just read your verdict?
 6              JUROR NO. 1:  Yes.
 7              MR. PALUS, DEPUTY CLERK:  Was it freely and
 8  voluntarily made?
 9              JUROR NO. 1:  Yes.
10              MR. PALUS, DEPUTY CLERK:  Thank you, please be
11  seated.
12              Juror No. 2, please stand.  Sir, was the verdict I
13  have just read your verdict?
14              JUROR NO. 2:  Yes.
15              MR. PALUS, DEPUTY CLERK:  Was it freely and
16  voluntarily made?
17              JUROR NO. 2:  Yes.
18              MR. PALUS, DEPUTY CLERK:  Thank you, sir.  Please be
19  seated.
20              Juror No. 3, please stand.  Ma'am, was the verdict
21  I've just read your verdict?
22              JUROR NO. 3:  Yes.
23              MR. PALUS, DEPUTY CLERK:  Was it freely and
24  voluntarily made?
25              JUROR NO. 3:  Yes.
```

```
 1            MR. PALUS, DEPUTY CLERK:  Thank you, please be
 2   seated.
 3            Juror No. 4, please stand.  Ma'am, is the verdict I
 4   have just read your verdict?
 5            JUROR NO. 4:  Yes.
 6            MR. PALUS, DEPUTY CLERK:  Was it freely and
 7   voluntarily made?
 8            JUROR NO. 4:  Yes.
 9            MR. PALUS, DEPUTY CLERK:  Thank you, please be
10   seated.
11            Juror No. 5, please stand.  Ma'am, was the verdict I
12   have just read your verdict?
13            JUROR NO. 5:  Yes.
14            MR. PALUS, DEPUTY CLERK:  Was it freely and
15   voluntarily made?
16            JUROR NO. 5:  Yes.  Thank.
17            MR. PALUS, DEPUTY CLERK:  You, ma'am, please be
18   seated.
19            Juror No. 6, please stand.  Ma'am, was the verdict I
20   have just read your verdict?
21            JUROR NO. 6:  Yes.
22            MR. PALUS, DEPUTY CLERK:  Was it freely and
23   voluntarily made?
24            JUROR NO. 6:  Yes.
25            MR. PALUS, DEPUTY CLERK:  Thank you, ma'am.  Please
```

1  be seated.
2           And Juror No. 7, please stand.  Ma'am, was the
3  verdict I have just read your verdict?
4           JUROR NO. 7:  Yes.
5           MR. PALUS, DEPUTY CLERK:  Was it freely and
6  voluntarily made?
7           JUROR NO. 7:  Yes.
8           MR. PALUS, DEPUTY CLERK:  Thank you, ma'am.  Please
9  be cited.
10          Your Honor, the jury has been polled.
11          THE COURT:  With that, we will close the record and
12 adjourn.
13          MR. PALUS, DEPUTY CLERK:  Very good.
14          (Whereupon, at 4:55 p.m., court was adjourned.)
15                         * * * * *
16                      C E R T I F I C A T E
17          I, Shirley Ann Hall, certify that the foregoing
18 is a correct transcript from the record of proceedings in the
19 above-titled matter.
20                     s/Shirley Ann Hall_____
                       Shirley Ann Hall, RDR, CRR
21                     Official Reporter
22
23
24
25